UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERWIN LUIS OROZCO SUCRE (A# 246-735-246),<br><br>          Petitioner,<br><br>   v.<br><br>WARDEN,<br><br>          Respondent. | No.  1:26-cv-02435 DC SCR<br><br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who is representing himself in this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.      Factual and Procedural History**

Petitioner, a citizen and national of Venezuela, requested asylum at the Gateway International Bridge in Brownsville, Texas, on February 13, 2023.  ECF No. 8 at 8.  Immigration officials charged Petitioner as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and paroled him into the United States for a period of one year.  Id.

On December 19, 2025, Orlando (FL) police arrested Petitioner for theft.  ECF No. 8 at 17-18.  The arresting officer contacted Immigration and Customs Enforcement ("ICE"), who detained petitioner on or about the next day.  Id. at 24-25.  On January 26, 2026, Florda State prosecutors formally charged petitioner with two counts of misdemeanor larceny in violation of

1

Fla. Stat. § 812.014(3)(a), two counts of third-degree grand theft in violation of Fla. Stat. § 812.014(2)(c)(1), and one count of first-degree petit theft in violation of Fla. Stat. §§ 812.014(2)(f). Id. at 18-21. The charges are pending. Id. Petitioner remains detained in the Mesa Verde Detention Center, within this judicial district. ECF No. 1 at 2. ¶ 6.

Petitioner filed the instant petition on March 30, 2026, arguing that his ongoing, prolonged detention violates the Due Process Clause of the Fifth Amendment. ECF No. 1 at 12. Petitioner states that he holds multiple jobs and has two children, ages 12 and 14, who depend on his care and income. Id. at 5. He requests immediate release or, in the alternative, a bond hearing before an immigration judge where the government bears the burden of proving by clear and convincing evidence that he is a risk of danger or flight. Id. at 13-14. Respondents oppose the petition on grounds petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2). ECF No. 8 at 3. As such, he lacks a liberty interest in freedom from immigration detention in any form other than that provided by Congress. Id. 3-4 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) ("Mezei")). If the Court grants relief, Respondent requests it be a bond hearing under 8 U.S.C. § 1226(a) and 8 C.F.R. § 1236.1 instead of immediate release. Id. at 4.

## II.    Legal Standard

### A.  Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited,

2

and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

////

3

### B.  Statutory Immigration Framework

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i).  But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview, the non-citizen is to remain detained.  See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3.  "Release under § 1182(d)(5)(A) requires a determination that the noncitizen poses neither 'a security risk nor a risk of absconding.'"  D.L.C. v. Wofford, No. 1:25-cv-01996 DC JDP (HC), 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) (quoting 8 C.F.R. § 212.5(b)).  Such parole, however, "shall not be regarded as an admission of the [non-citizen]."  8 U.S.C. § 1182(d)(5)(A).  Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  Id.

### III.    Analysis

In reviewing Petitioner's due process challenge, the undersigned turns first to the question of whether he has a protected liberty interest.  The record is not clear as to the statutory basis for Petitioner's initial detention of subsequent release on parole.  But because Petitioner applied for asylum, it appears immigration officials processed him as 8 U.S.C. § 1225(b)(1) and granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).  See Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (applicants for admission may be released on humanitarian parole "regardless" if

4

detention is authorized by § 1225(b)(1) or § 1225(b)(2)).

"[A] substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections." D.L.C., 2026 WL 25511, at *4 (collecting cases). As District Judge Coggins has further explained:

> Specifically, this court has found that the Due Process Clause requires that, in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the government must provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered.

Cesar Luis v. Warden, No. 1:26-cv-1823 DC SCR, 2026 WL 700713, at *1 (E.D. Cal. March 12, 2026) (collecting cases).

Consistent with these authorities, the undersigned concludes that Petitioner possesses an established liberty interest in his continued release on humanitarian parole.[1] Petitioner retains this liberty interest even though his parole was for one year and apparently expired sometime in 2024. See D.L.C. v. Wofford ("D.L.C. II", No. 1:25-cv-1996 DC-JDP (HC), --- F. Supp. 3d ---, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) ("[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his 'liberty interest [does] not expire along with his parole.'"); Anderson v. Chernut, No. 1:26-cv-1960 DAD CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) ("Even though petitioner's parole authorization expired, petitioner maintains her liberty interest in continued release.").

Having determined Petitioner has a protected liberty interest, the undersigned applies the

---

[1] Respondents argue that petitioner "does not possess a right to freedom from immigration detention in any form other than the form provided by Congress." ECF No. 8 at 2-3 (citing Mezei, 345 U.S. at 212. However, Mezei and its progeny, particularly Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020), are materially distinguishable from this case. The Supreme Court's discussion of due process in Thuraissigiam "is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question." Padilla, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023). Moreover, Mezei concerned the detention of an individual who had not been released into the United States and who the government claimed presented national security concerns. By contrast, petitioner here was so released and the government makes no claim about national security concerns about him.

Mathews factors to determine what process is owed.  As to the first factor, Petitioner has a strong private interest in remaining free from detention.  Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").  During his nearly three years on parole, Petitioner developed the "enduring attachments of normal life," Morrissey, 408 U.S. at 482, including securing multiple jobs to support his two minor children.  Accordingly, the first factor favors Petitioner.

The second factor, the risk of erroneous deprivation, similarly tilts toward Petitioner.  The risk of erroneous deprivation is high where Petitioner has been detained for almost five months and "has not received any bond or custody redetermination hearing[.]" A.E. v. Andrews, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Although Petitioner was turned over to ICE after his arrest for theft, Respondents do not argue that petitioner is a flight risk or danger to public safety, and no neutral arbiter has made such a determination.  Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.D.T.M. v. Wofford, No. 1:25-cv-1141 KES SKO (HC), 2025 WL 2617255, at *6 (E.D. Cal. Sept. 9, 2025); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).  Thus, the final factor also favors Petitioner.

Accordingly, the undersigned finds that Petitioner's re-detention without notice or an opportunity to be heard violated due process and recommends that he be granted his immediate release.  The undersigned has considered Respondent's request to only order a bond hearing but rejects it.  While Petitioner's theft arrest was the apparent impetus for his re-detention, Respondent does not argue it represents a circumstance precluding release.  "Respondents point to no reasons why a pre-deprivation hearing could not be held, and provide no evidence of 'urgent concerns,' warranting petitioner's re-detention without a hearing, thus, 'a pre-deprivation hearing is required to satisfy due process.'" Soorov v. Warden of Mesa Verde Processing Center et al., No. 1:26-CV-1332 DC AC, 2026 WL 1194859, at *4 (E.D. Cal. May 1, 2026) (quoting Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025)).

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Petitioner Derwin Luis Orozco Sucre's (A# 246-735-246) application for a writ of habeas corpus be GRANTED.

2.      Petitioner be released immediately from respondents' custody.

3.      If the government seeks to re-detain petitioner, it must provide no less than 7 days' notice to petitioner and must hold a pre-deprivation bond hearing, where it bears the burden of proof by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.

4.      Respondents be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the order adopting these findings and recommendations.

5.      Any order adopting these findings and recommendations include language that it does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

6.      Petitioner's motion to appoint counsel (ECF No. 3) be DENIED as moot.

7.      Respondent's Motion to Dismiss All Respondents Other than Petitioner's Immediate Custodian (ECF No. 9) be GRANTED without further Docket modification.

8.      The Clerk of the Court be directed to enter judgment in petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets

7

the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 4, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE